## EDWARDS *v.* PLANTERS AND PEOPLES MUTUAL FIRE ASSOCIATION OF GEORGIA.

A policy of fire-insurance expressly stipulating that a ginhouse " which shall at intervals be operated by steam" will not be protected "so long as it is so operated" does not cover loss occasioned by the burning of a ginhouse the machinery in which is operated by steam power, if, on a day during the regular ginning season, the engine be fired up with a view to getting the machinery in order for ginning on the next day cotton already in the house, and the fire occurs during the intervening night. This is so though for a period of many days prior to that on which the engine is fired up no ginning has been done.

Argued June 20, — Decided July 14, 1900.

Action on insurance policy. Before Judge Candler. Clay ton superior court. September term, 1899.

*James K. Hines* and *John L. Travis*, for plaintiff.
*C. T. Roan, W. L. Watterson*, and *W. M. Wright*, for defendant.

LUMPKIN, P. J. The plaintiff in error excepted to a judgment of nonsuit. His action was brought against the association for the recovery of a loss sustained by the burning of his ginhouse. The association interposed the defense that the property described was not, at the time of the fire, covered by the policy. It contained a stipulation in these words: "If a ginhouse or other building be taken into this association which shall at intervals be operated by steam, the insurance on such building, or buildings adjacent and endangered thereby, shall be removed so long as it is so operated; but such danger

being removed from such building, the policy shall again become intact." The following is a condensed statement of so much of the evidence as is now material to be considered: The plaintiff's gin was one operated by steam. The fire occurred on the 14th day of January, 1896, at four o'clock in the morning. The ginning season usually begins in September and ends in January. No cotton was ginned by the plaintiff after the 31st day of December, 1895; but, during the month of January, and up to the date of the fire, customers had been putting cotton in the ginhouse to be ginned. It was the intention of the person in charge of the gin to do some ginning on the 14th. With this end in view, the engine was fired up on the 13th, to see if the machinery was all right; but, as it was found to be out of order, the engine was stopped.

We are of the opinion that the judgment of nonsuit was right. Even if the above-quoted stipulation in the policy is susceptible of the construction that it should, during the continuance of the ginning season, protect the ginhouse for intervals of one or more days while ginning operations were entirely suspended — which is, to say the least, doubtful, — we are quite clear that where cotton was in the ginhouse ready to be ginned, and on a given day the engine was fired up with a view to getting the machinery in order for ginning on the ensuing day, and during the intervening night the property was destroyed by fire, the company was not liable. Certainly, if any cotton had been actually ginned on the 13th, and operations had been suspended merely because of some temporary breakdown in the machinery, and there had been an intention after making the needed repairs to resume ginning on the next day, it could not be doubted that a fire occurring before the time for beginning work on that day should be regarded as a fire taking place during an interval in which operations by steam were being conducted. It makes no practical difference that there was no actual ginning on the 13th. As steam was generated and the machinery put in motion, thus bringing into active operation the very dangers against which the company by its contract declined to insure the plaintiff, the case presents the same aspect as if cotton had really been ginned on that day. Any other construction than that which we have placed upon that clause of the policy

now under consideration would manifestly be unjust to the company, and would, we think, fail entirely to carry out the intention of the parties. Certainly, it can not fairly be gathered from this policy that the company undertook to keep the property insured by night, when the engine was at a standstill, and yet, merely because the wheels were turning, be exempt from liability for a fire which occurred in the daytime, — when those operating the gin were present and thus enabled to take proper precautions to prevent loss. Literally speaking, it would, all the while, be true that the gin was not being operated by steam during the hours of night, if work was conducted only by day; but it was obviously the purpose of the company to avoid assuming the risk of fires which might originate in the nighttime during a period when ginning operations were being actively carried on by day.

The above disposes of the question by the determination of which this case is controlled, and we therefore do not refer to points made in the bill of exceptions relating to other matters of defense set up by the company.

*Judgment affirmed.    All the Justices concurring.*